**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:25-mj-188** |
| **Plaintiff,** | |
| vs. | **MAGISTRATE JUDGE JOLSON** |
| **ISAIAH E. BENNETT,** | |
| **Defendant.** | |

**EMERGENCY MOTION TO REVOKE DEFENDANT'S**
**COMMUNICATION PRIVILEGES**

The defendant, Isaiah E. Bennett, is a preindictment matter scheduled before the Court with an indictment deadline of July 21, 2026.   For the reasons that follow, the Government respectfully requests that this Court issue an Order restricting the defendant from having telephone contact – which includes phone calls, text messages, video calls or internet-based communications – with anyone except defense counsel's legal team, including Laura Byrum, Joseph Medici, and defense counsel's support staff (to include the litigation support analyst, investigator, accountant, paralegal, psychologist, and mitigation expert). The Government asserts that defendant has continued to communicate sexually with a minor female since his incarceration on the instant offenses, which include sexual exploitation of minor charges similar in nature to his current jail house communications with a minor female.

**FACTUAL AND PROCEDURAL BACKGROUND**

The defendant was initially charged in April 2025 by way of a criminal complaint which alleged that between September 2023 and December 2024, the defendant violated numerous child exploitation violations of law, including violations of 18 U.S.C. §2251 (Sexual Exploitation of

Minor), 18 U.S.C. §§2252 and 2252A (Possession, Distribution, and/or Receipt of Child Pornography), and 18 U.S.C. §2422 (Coercion and Enticement of a Minor). (*See* Doc. # 1, Criminal Complaint and Affidavit.) On or about April 8, 2025, an initial appearance was held before Magistrate Judge Chelsey M. Vascura where the defendant was admonished about the maximum possible penalties related to his violations of federal law, to include a 15-30-year term of imprisonment for violations of 18 U.S.C. §2251 and a mandatory minimum term of imprisonment of 10-years and up to life incarceration for violations of 18 U.S.C. §2422. (*See* Doc. # 8, Initial Appearance Minutes.)

On or about April 11, 2025, a detention hearing was held and Magistrate Judge Vascura found by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community and that the defendant had not rebutted any presumption that exited pursuant to statute. (*See* Doc. #16). Part of the evidence that was brought forth at that hearing related to the facts contained in the criminal complaint which outlined defendant's communications with underage females, identified minor victims, and his exploitation of one particular 15-year-old victim who exploited her own younger sisters (including a toddler aged minor female) at the request of the defendant.

It was also noted in the criminal complaint affidavit, which the government relied on at the detention hearing, that there were conversations between the defendant and at least eleven other Snapchat users where the defendant sent, received, or requested child exploitation material and, to date, many of these users the defendant was communicating with have been confirmed to be minors. The Pretrial Services Report and complaint affidavit also revealed at the time of these activities, the defendant was on probation in Franklin County, having been convicted of

2

Disseminating Matter Harmful to Juveniles in violation of O.R.C. 2907.31 on or about May of 2024 in the state of Ohio.    The

Since the time of the defendant's arrest, the parties have been attempting to reach a preindictment resolution on the case.    A proposed plea agreement was tendered to the defendant for consideration which outlined extensively all of his criminal activities involving the sexual exploitation of minors as well as his lengthy terms of incarceration he would face should he accept the terms of the plea agreement.

The government now alleges that in April 2026, HSI Columbus received information about the defendants alleged communications with a minor female while incarcerated at the Corrections Center of Northwest Ohio (CCNO).    It was reported that the defendant had been bragging to other inmates about having a teenage girlfriend and communicating and sending images back and forth to her since arriving at CCNO.    On or about April 8, 2026, a request to CCNO was submitted by HSI for communication records associated with the defendant to include phone calls, video calls, messaging, and photos. CCNO verified that the defendant was transferred to their facility in May 2025. Records were received by HSI on both April 8, 2026 and April 15, 2026 and contained CCNO records associated with the defendant from May 2025 to the present.

Agents began reviewing the records immediately and during the review, observed messages and listened to communications between the defendant and a minor female, N.H., who purportedly resides in Kentucky.    On multiple occasions, the defendant solicited images and videos from N.H. and engaged in sexual conversations with her.    Agents also observed communications between the defendant and his grandmother, J.W., and her adult roommate Faye. J.W. and Faye appeared to be facilitating communication between the defendant and N.H.    In a

3

preliminary review of the communications received by CCNO, agents noted dozens of discussions between the defendant, J.W., and Faye where they talk about receiving images, videos, and messages from N.H. and they provide them to the defendant. The defendant also requested Faye to log in to his Discord account to communicate with N.H. there.

There is a total of 465 call records between the defendant and phone number ending in *737, belonging to N.H., between May 24, 2025 to present. Below are brief summaries and synopses of information from the pertinent records between the defendant, N.H., J.W., and Faye that have been reviewed by agents thus far:

**<u>AUDIO CALLS</u>**

- **5/24/2025 (Call #800)-** The defendant asks N.H. why she hasn't texted him. N.H. replies, "Well your grandmother said that I couldn't have contact with you or her". The defendant states, "Hmmm which is true but you know me. I'm going to be in jail for 10 years so I don't really give a fuck. She (J.W.) said she is going to bring you to come visit me".

- **06/01/2025 (Call #784)-** the defendant asks N.H, "What are you wearing …take a picture when you get off…I want to see you".

- **06/01/2025 (Call #779)-** the defendant tells N.H. that J.W. lets him use her social media for things the defendant is not supposed to get like weed and shit. He informs N.H.to use his social media name to set up her account (which the agents believed was a reference to either a Textnow or GTL account).

  The defendant tells NH. "I'm going to smack you in your face with my cock." "If you come over here I'm going to give you a golden shower". "You going to get ready now so I can hear it (masturbate)?...The way I want to put my dick between your lips."

- **08/14/2025 (Call #600)-** The defendant asks N.H. to masturbate for him. They both presumably start masturbating and moaning. N.H asks the defendant "Did you come?" and he replies "Yes".

- **01/15/2026 (Call #336)-** The defendant states the following things to N.H: "Have you been playing with your pussy and shit?"…"They keep denying pictures of you that my grandma (J.W.) sends"…"Are your tittties bigger now?"…."I want to

4

fuck you so bad"..

- **01/16/2026 (Call #334)-** The defendant asks N.H. "Hey did you start sending me pictures on Discord yet?" and she responds "I will."

- **01/21/2026 (Call #322)-** The defendant asks N.H. if she started sending him pictures yet and N.H. says only pictures of her face.   The defendant replies, "That's it? You told me you were going to send pussy pics and shit".

- **01/22/2026 (Call #320)-** The defendant asks N.H. if she sent any pics.   N.H. states she sent a picture of her vagina.   The defendant asks N.H. to masturbate, she says no and then reluctantly starts to masturbate.   The defendant instructs her on how to do it and states, "You better not be fucking anybody else.   That pussy is mine"…"You need to send me a lot of pussy pics and shit.   I want my Discord inbox to be filled."

- **01/26/2026 (Call #294)-** In a conversation with N.H, the defendant talks about a third party being 16 or 17 years old.   N.H. states, "Hey, that's how old I am." The defendant tells her to shut up and she states "just kidding just kidding".

## VIDEO CALLS

- **3/8/2026 (Call # 4919651792)-** The defendant tells his grandmother, J.W., that N.H. wants to emancipate. J.W. tells the defendant to "shush" and stop talking about it. J.W. smirks at the camera and says N.H. doesn't need to emancipate because she is over 18.

- **3/9/2026 (Call # 4922997342)-** J.W. tells the defendant that one of the images that she sent to him of N.H. got flagged by the system for being inappropriate and she wasn't allowed to send it.   J.W. tells the defendant "it was probably because you could see N.H.'s cleavage in it."

  The defendant tells his grandmother, J.W., that N.H. can't video chat because she has to enter her SSN to set up an account.   The defendant told N.H. to use her mom or grandma's SSN to set up the account. J.W. tells BENNETT to be quiet and to not talk about that.

- **3/22/2026 (Call # 4955253872)-** The defendant tells his grandmother, J.W., that N.H. is probably at school at this time of the day.   J.W. tells the defendant that N.H. hasn't sent any new pictures to her.

  BENNETT instructs Faye to login to his Discord account to see if N.H. has sent any new pictures and that if N.H. sent pictures, the defendant instructs Faye to save them and send them to his email.

**LEGAL STANDARD**

As it pertains to pre-trial detainees, the Supreme Court has held that restrictions and conditions imposed as a result of detention are permissible so long as they "do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-537 (1979). "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539. In assessing whether a condition is related to a legitimate government objective, the Court must look to: (1) whether there is a "valid, rational connection" between the restriction and "the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open," (3) the impact of the requested accommodation on the administration of the facility, and (4) the "absence of ready alternatives." *Turner v. Safley*, 482 U.S. 78, 89–90 (1987) (internal quotations omitted).

Maintaining the security of a detention facility is one such legitimate governmental objective. *See id*. at 547; *Block v. Rutherford*, 468 U.S. 576, 586 (1984) ("there is no dispute that internal security of detention facilities is a legitimate governmental interest"). It is also permissible for a facility to deny detainees certain privileges if a detainee violates rules of the facility that are designed to maintain security. *See Stamper v. Campbell County, Ky.*, 415 Fed. Appx. 678, 680-681 (6th Cir. 2011) (finding no denial of Sixth Amendment right to counsel where pretrial detainee was prohibited from all phone access in the five-day period leading up to his plea hearing, as punishment for his violation of jail rules, which included the possession and attempted concealment of dangerous contraband); *Nouri v. County of Oakland*, 615 Fed. Appx. 291, 299 (6th Cir. 2015) (no Constitutional violation for defendant to be denied contact visits with his minor

6

children as a result of his numerous violations of jail ordinances that led to his status as a "high security" detainee).

While the Sixth Circuit has relied on other Supreme Court decisions to find that prisoners have a "right to communicate with family and friends" that is protected under the First Amendment, *see Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994), such a right is not unlimited and is subject to "rational limitations in the face of legitimate security interests." *Id.* *See also Iswed v. Caruso*, 573 Fed. Appx. 485 (6th Cir. 2014) (applying *Washington* where prison denied inmate ability to place international phone calls and assessing the communication restriction pursuant to the *Turner* four-part test). The Sixth Circuit's rule, thus, is the same that the Supreme Court laid out in *Wolfish* and *Turner*. As explained below, the restriction that the government is seeking does not constitute punishment of a pretrial detainee because it is reasonably related to a legitimate objective under the *Turner* test.

## ANALYSIS AND ARGUMENT

The Government's request is reasonably related to a legitimate interest, specifically limiting the ability of the defendant to further sexually exploit minor victims, thereby committing new federal offenses. The Crime Victims' Rights Act specifically provides such protection for victims, stating that they have a "right to be reasonably protected from the accused." 18 U.S.C. § 3771(a)(1). The connection between the proposed restriction and the Government's objective is also obvious. The defendant is accomplishing the thing that the Government has a legitimate interest in preventing through his abuse of the jail telephone, video, and messaging system. Restricting his access to that phone system relates only to the Government's interest in protecting victims from sexual exploitation. This restriction also is not overly broad, as the defendant may

7

still communicate with friends and family through in-person visits and would be permitted to make telephone calls to his defense team.   Finally,[1] the Government is aware of no possible less-restrictive alternatives that would accomplish the objective.   The defendant's refusal to follow the law, which he violated in a similar way, thereby resulting in his current detention, is extremely concerning. The fact that he is using the jail technologies to continue exploiting minor females in a similar manner is downright unacceptable, and that his continuing exploitation of minors is being facilitated by his own family members is downright appalling.   Therefore, this proposed motion should be granted, and the defendant should be restricted from making any phone calls, including the sending of text messages, audio messages, or video chats, or other internet-based forms of communication, from the jail, except to his legal team.

WHEREFORE, for all of the foregoing reasons, the Government respectfully requests that the Court issue an Order restricting the defendant from making any telephonic contact from the jail, except for communications with defense counsel's legal team, including Laura Byrum and Joseph Medici, and defense counsel's support staff (to include the litigation support analyst, investigator, accountant, paralegal, psychologist, and mitigation expert).

Respectfully submitted,

**DOMINICK S. GERACE, II**
UNITED STATES ATTORNEY

*Emily Gzernjewski*

_____

---

[1]  The Government has no information pertaining to the third *Turner* factor, i.e., the impact the proposed restriction would have on prison officials, other inmates, and the allocation of prison resources.   Given the amount of time the defendant has spent on the phone since his arrest, which appears to be significant, the government believes that restricting his calls will actually work to the benefit of other inmates, as they will have greater access to the limited phone resources.

**EMILY CZERNIEJEWSKI (IL 6308829)**
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 406-3572
Fax No.: (614) 469-5653
Email: Emily.Czerniejewski@usdoj.gov

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Emergency Motion for was served this 29th day of April 2026, electronically on all counsel of record.

_____
**EMILY CZERNIEJEWSKI (IL 6308829)**
Assistant United States Attorney